IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARLENE MELTON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES SOCIAL SECURITY | : | |
| ADMINISTRATION | : | NO. 10-7217 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                 **August 18, 2011**

Plaintiff Darlene Melton commenced this employment discrimination action against her employer, Defendant United States Social Security Administration ("SSA"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> The SSA has now filed a Motion for Partial Summary Judgment, in which it asks that we enter judgment in its favor on Plaintiff's claims of race discrimination, gender discrimination, and a discriminatory failure to promote, based on Plaintiff's failure to exhaust her administrative remedies.[1] For the following reasons, we grant the Motion insofar as it seeks judgment on those claims.

**I.     BACKGROUND**

In October 2008, Plaintiff, an SSA employee, received a performance appraisal from her supervisor, Susan Tonik. (<u>See</u> Ex. H. to Def.'s Mot. at 2 ¶ 6.) Plaintiff disagreed with the appraisal and contacted an Equal Employment Opportunity ("EEO") counselor to institute a discrimination complaint. (<u>See</u> Ex. A to Def.'s Mot. at 1, 3.) In conjunction with Plaintiff, the counselor completed an EEO Counseling Report (hereinafter "Counseling Report" or "Report"). (<u>See</u> <u>id.</u> at 1-4.) The Counseling Report form prompts the counselor to mark the "types of discrimination" the complainant claims to have suffered and to indicate the "matter causing the complaint" by

---

[1]The SSA's Motion also asked that we enter judgment in its favor on Plaintiff's claim that a performance evaluation that she received was retaliatory. However, the SSA subsequently withdrew this request and no longer seeks judgment on that claim. (<u>See</u> Def.'s Reply Br. at 2.)

"select[ing] from one or more" of several options provided. (Id. at 2.) Plaintiff's completed form reflects that the only type of discrimination that Plaintiff claimed to have suffered was "Retaliation/Reprisal," and it identifies the matters giving rise to Plaintiff's complaint of discrimination as "Evaluation/Appraisal" and "Harassment (Non-Sexual)." (Id.) The completed form does not include checks in the boxes to indicate that Plaintiff suffered discrimination based on "Sex-Female" or "Race-Black," nor does it indicate that "Non-Selection" or "Promotion" were matters giving rise to her complaint. (Id.)

A narrative account attached to the Counseling Report reflects that Plaintiff believed that her poor performance appraisal was a retaliatory response to testimony she gave to the Equal Employment Opportunity Commission ("EEOC") in connection with a 2007 race and age discrimination case arising out of the termination of an African American SSA employee, who, like Plaintiff, was under Ms. Tonik's supervision. (See id. at 3; Ex. H. to Def.'s Mot. at ¶ 4.) The narrative account also reflects that Plaintiff reported to the EEO counselor that Ms. Tonik had subjected Plaintiff to additional workplace harassment, dating back to the time of her testimony. (See Ex. A to Def.'s Mot. at 3.)

Plaintiff filed an EEOC Complaint with the SSA in late February, 2009.[2] (See Ex. B to Def.'s Mot.) A checked box in the Complaint indicates that Plaintiff's prior Counseling Report "outlin[ed] the issues and bases" of her Complaint. (Id.) On April 13, 2009, the SSA sent Plaintiff a letter in which it stated that it read her Complaint to set forth two claims: (1) that "based on reprisal, management subjected [her] to continuous harassment (nonsexual) and a hostile work

---

[2]An affidavit that Plaintiff submitted with her response to the SSA's Motion states that Plaintiff filed the EEOC Complaint shortly after July 24, 2009. (See Ex. A to Pl.'s Br. at ¶¶ 4, 6.) However, the EEOC Complaint in the summary judgment record reflects a filing date of February 2009. (See Ex. B to Def.'s Mot.; see also Ex. G to Def.'s Mot.)

environment beginning 2007 to the present"; and (2) that "based on reprisal, [she] received a negative performance evaluation for fiscal year 2008." (Ex. G to Def.'s Mot. at 1-2.) The letter stated that the SSA was dismissing Plaintiff's claim that she received the performance evaluation in retaliation for her EEOC testimony, because Plaintiff had opted to grieve that claim pursuant to a process set forth in her union's collective bargaining agreement. (See Ex. G to Def.'s Mot. at 2-3 (citing 29 C.F.R. § 1614.107(a)(4) (stating that agency shall dismiss complaint where the complainant has raised the matter in a negotiated grievance procedure).) The letter further stated, however, that the SSA would initiate an investigation into Plaintiff's second claim, i.e., that she had been subjected to a hostile work environment and harassment in retaliation for her testimony in her co-worker's discrimination case. (See Ex. G to Def.'s Mot. at 1-2 ) (Id.) The SSA gave Plaintiff the name and phone number of a member of its intake team, whom Plaintiff could call with any questions, and closed the letter with a statement that, if Plaintiff did not contact the intake team within ten days, the SSA would "conclude that the claim ha[d] been properly identified." (Ex. G to Def.'s Mot. at 3.) There is no evidence in the summary judgment record that Plaintiff ever contacted the intake team to correct any misidentification of her claims.

In connection with the EEO investigation, which was conducted between June 25, 2009, and August 15, 2009, Plaintiff provided an affidavit, which gave further details concerning the retaliation that allegedly followed Plaintiff's 2007 testimony in her co-worker's discrimination case. (See Ex. H. to Def.'s Mot.) By letter dated September 10, 2009, the SSA sent its report of investigation to both Plaintiff and Plaintiff's counsel. (See Ex. I to Def.'s Mot. at 1-2.) On March 8, 2010, the SSA issued a final decision, finding that Plaintiff had not been "discriminated against based on reprisal." (Id. at 5.)

Plaintiff appealed the SSA's decision to the EEOC on April 5, 2010. (See Ex. J to Def.'s

Mot. at 1.) On September 14, 2010, the EEOC affirmed the SSA's decision. (Id.) In its written opinion, the EEOC stated that Plaintiff asserted on appeal that "since she testified at a co-worker's discrimination hearing, she ha[d] been subjected to a hostile work environment," and that a "negative performance evaluation had been used to deny [her] promotional opportunities." (Id. at 2.) The EEOC refused to address the claim that Plaintiff had been denied "promotion opportunities." To the extent that Plaintiff was asserting that she was denied promotions as a consequence of the performance appraisal, the EEOC noted that the SSA had dismissed Plaintiff's retaliation claim arising out of the performance appraisal and that Plaintiff had not challenged that decision. (Id.) To the extent that Plaintiff was asserting for the first time on appeal that she was denied "promotion opportunities" because of discriminatory retaliation, the EEOC determined that those claims were not properly before the EEOC because she had not raised them previously. (Id. at 2.) Thus, the EEOC "solely review[ed]" Plaintiff's claim that she was subjected to a hostile work environment because of retaliation (id.), and concluded that Plaintiff had "failed to show that the alleged harassment occurred because of her prior protected activity" or that the alleged "discriminatory events, taken as a whole, were sufficiently severe or pervasive enough to establish a prima facie case of retaliatory harassment." (Id. at 3.) At the conclusion of its decision, the EEOC advised Plaintiff that she had the right to file a civil action with the District Court within ninety calendar days from the date she received the decision. (Id. at 4.)

On December 13, 2010, Plaintiff filed the instant Title VII action, alleging that the SSA engaged in race discrimination, gender discrimination, and retaliation, and asserting that the matters giving rise to her discrimination claims were both a hostile work environment and failures to promote. Specifically with respect to the failures to promote, Plaintiff alleged that she was denied a permanent promotion in July 2007, and that, over the following fourteen months, i.e., July 2007

through September 2008, she "applied for 14 open positions" and "was denied each promotion." (Compl. ¶ 16.)

## II.   LEGAL STANDARD

Summary judgment, either full or partial, is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate an absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a party files a properly supported motion for summary judgment, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 248.  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.  In making the summary judgment determination, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted).

## III.   DISCUSSION

In its Motion for Partial Summary Judgment, Defendant seeks judgment in its favor on Plaintiff's Title VII claims insofar as they rest on allegations of race and/or gender discrimination and insofar as they complain of failures to promote.  Specifically, Defendant argues that it is entitled

to judgment on these aspects of Plaintiff's Title VII claims because the undisputed record evidence establishes that Plaintiff did not raise these claims in her EEOC charge and, thus, has not exhausted her administrative remedies with respect to these claims.

It is well established that, as a precondition to filing an employment discrimination suit under Title VII, a plaintiff must exhaust her administrative remedies. Webb v. City of Philadelphia, 562 F.3d 256, 262 (3d Cir. 2009) (citations omitted)). The purposes of this requirement are at least two-fold: it encourages the settlement of "disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court," Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996), and it puts the employer on notice of federal claims that are likely to be filed against it. Barzanty v. Verizon Pa., Inc., 361 F. App'x. 411, 414 (3d Cir. 2010) (citing 42 U.S.C. §§ 2000e-5(b), (e)(1)).

The Code of Federal Regulations sets forth the steps that a federal employee must take to exhaust her administrative remedies. 29 C.F.R. §§ 1614.105-1614.109. First, the employee must obtain counseling with an EEO counselor. Id. § 1612.105(a)(1). Second, if the matter cannot be resolved, the employee must file a written complaint with the agency that allegedly discriminated against her (the "Agency"). Id. § 1614.106. The Agency conducts an investigation and issues a final Agency decision. Id. §§ 1614.108, 1614.110. The employee may appeal the Agency decision to the EEOC, which itself issues a decision. Id. § 1614.401, 1614.405. If unsatisfied, the employee may then file a civil action in the district court. Id. § 1614.407.

The "parameters of the civil action in the district court are defined by the scope of the EEOC investigation which [could] reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). We must interpret "the 'preliminary requirements for a Title VII action . . . in a nontechnical fashion,'" but must also be careful not to permit "the aggrieved party . . . 'to bypass the administrative

process.'" Webb, 562 F.3d at 263 (quoting Ostapowicz, 541 F.2d at 398).

      A.      **Race and Gender Discrimination**

Plaintiff alleges in her federal complaint that the SSA engaged not only in discriminatory retaliation, but also in race and gender discrimination. She did not, however, raise claims of race or gender discrimination with the SSA and EEOC. The clear focus of Plaintiff's EEOC charge and Complaint was the SSA's alleged retaliation against her for her 2007 EEOC testimony. Indeed, the Counseling Report unequivocally indicates with the use of a checked box that the "Type of Discrimination" about which Plaintiff was complaining was "Retaliation/Reprisal." (See Ex. A to Def's Mot. at 2 (containing check in the box adjacent to "Retaliation/Reprisal" and no checks in the boxes adjacent to "Sex-Female" or "Race-Black").) Moreover, the Report's narrative account is entirely consistent with the Counseling Report's indication that Plaintiff was complaining solely about retaliation, because the account begins by recounting how Plaintiff had testified as a witness in her male co-worker's EEOC race discrimination proceeding and then asserts that Plaintiff was "targeted" for discrimination after she testified. (Id. at 3.) The narrative account further asserts that Plaintiff believed that her negative performance appraisal from Ms. Tonik in October 2008 was due to "reprisal." (Id.) Based on these charges, both the SSA and the EEOC understood Plaintiff to be asserting only retaliation claims. (See Exs. G and J to Def.'s Mot.)

Plaintiff nevertheless argues in her brief in opposition to the SSA's Motion for Partial Summary Judgment that her EEOC charge also raised claims of race discrimination. In support of this argument, Plaintiff highlights language in the Counseling Report's narrative, which states as follows:

> Susan Tonik is a white female in her mid 50s. I will not say that race
> is the problem, but it may be an underlining [sic] covert problem. I
> am the only woman of color working in the Title XVI unit.

(Ex. A to Def.'s Mot. at 3.)  However, we do not "reasonably . . . expect[]" an investigation into race discrimination to grow out of an EEOC charge merely because, as here, the charge mentions race. Ostapowicz, 541 F.2d at 399.  Indeed, far from asserting in the Counseling Report that she suffered discrimination on the basis of race, Plaintiff states in the Report that she "will not say that race is the problem."  (Ex. A to Def.'s Mot. at 3 (emphasis added).)   Furthermore, there is no evidence in the record that Plaintiff ever asked that her charge be expanded to include a race discrimination claim, even after the SSA advised her that it would only be investigating retaliation and warned that it would "conclude that the claim ha[d] been properly identified" if Plaintiff did not promptly advise it otherwise.  (Ex. G to Def.'s Mot. at 3.)   Under these circumstances, and in the absence of any other evidence in the record that Plaintiff advised the SSA or the EEOC that she was claiming that she suffered discrimination on account of her race, we conclude that the undisputed record evidence establishes that Plaintiff did not raise a race discrimination claim in the EEO process, and that it would not be reasonable to expect an investigation into a race discrimination claim to arise out of Plaintiff's charge of retaliation as presented in that process.

Notably, Plaintiff does not specifically argue in her response to the SSA's Motion for Partial Summary Judgment that she raised a gender discrimination claim in her charge of discrimination, and she does not point to any evidence that she raised such a claim.  Indeed, the EEOC Complaint and Counseling Report do not mention or even suggest gender discrimination, and there is no record evidence that Plaintiff ever asked the SSA or the EEOC to expand her charge to include discrimination on the basis of her gender.  Accordingly, we conclude that Plaintiff did not raise a gender discrimination claim in the EEO process and, under the circumstances presented, it would not be reasonable to expect an investigation into gender discrimination to arise out of Plaintiff's charge of retaliation.

B. **Failure to Promote**

Plaintiff alleges in her federal complaint that the SSA, motivated by discrimination, not only subjected her to a hostile work environment, but also denied her various promotions within the SSA. However, in her EEOC charge, the only "Matter[s] Causing the Complaint" that Plaintiff identified were "Evaluation/Appraisal" and "Harassment (Non-Sexual)." (See Ex. A to Def's Mot. at 2.) The only mention of promotion in the charge is a comment in the Counseling Report that Plaintiff "believe[d] that the comments [on her performance appraisal] . . . would interfere with [her] potential for promotion by [the] agency or other governmental agencies." (See Ex. A to Def's Mot. at 3.)

As an initial matter, we conclude that it would be unreasonable to expect the investigator in this case to investigate a failure to promote claim based on a negative performance appraisal when Plaintiff was pursuing claims regarding her performance appraisal in a separate grievance process. Even if this were not the case, we do not "reasonably . . . expect[]" an investigator to investigate a failure to promote claim based on the mere suggestion that, sometime in the future, Plaintiff may be overlooked for a promotion; indeed, there is not yet a failure to promote to investigate under those circumstances. Ostapowicz, 541 F.2d at 399. Moreover, we note that in Plaintiff's District Court Complaint, Plaintiff bases her failure to promote claims on jobs she did not obtain between July 2007 and September 2008, before she sought EEO counseling, and yet the Counseling Report speaks only of a possibility that she will not be promoted in the future. Given that she could have raised these prior failures to promote in her Counseling Report, and did not, it is plain that she did not initiate the exhaustion of these particular failure to promote claims in her EEO charge.

There is also no evidence in the record that Plaintiff attempted to advise the SSA after the filing of her charge that she intended to pursue discrimination claims based on failures to promote.

We acknowledge that Plaintiff attempted to raise failure to promote claims in her appeal to the EEOC but, as noted above, the EEOC refused to consider those claims because Plaintiff had not raised them earlier. (See Ex. J to Def.'s Mot. at 2.) Plaintiff does not now argue that this determination was in error, nor does she advance any argument that her assertion of certain failure to promote claims for the first time on appeal was sufficient to exhaust her administrative remedies.

For the foregoing reasons, we conclude, based on the undisputed evidence in the summary judgment record, that Plaintiff did not raise in her EEOC charge a discrimination claim based on any failure to promote and that, as a result, no investigation into a failure to promote could reasonably be expected to grow out of the EEOC charge.

### C.     Alleged Interference with Exhaustion

Plaintiff argues in her response to the SSA's Motion for Partial Summary Judgment that she should be excused from any failure to exhaust her administrative remedies with respect to her race and gender discrimination claims and claims of failure to promote, because the SSA and her union interfered with the administrative process and thereby deprived her of the opportunity to exhaust. Plaintiff cites no legal authority in support of her underlying premise that the exhaustion requirement may be excused where a plaintiff can show that her employer or union interfered with her exhaustion of administrative remedies. Moreover, even assuming that such authority exists, Plaintiff points to no evidence that either the SSA or her union in any way interfered with the EEO process concerning the claims at issue. Rather, she points only to documents that suggest that her union (and possibly the SSA) interfered with the separate grievance process that she utilized to pursue claims arising out of her poor performance appraisal. (See 7/24/09 Union letter, attached as Ex. E to Pl.'s Br (stating that union would not pursue arbitration of Plaintiff's grievance because it did not believe it could prevail); Aff. of P. Sullivan, attached as Ex. C to Pl.'s Br. (stating that

Plaintiff's union invoked arbitration in connection with grievance, but that arbitration was never scheduled).) As such, there is no evidence in the summary judgment record that would permit an inference that either the SSA or the union interfered in the EEO process that is the subject of this Memorandum, and there is therefore no factual basis for Plaintiff's legal claim that her failure to exhaust should be excused due to interference.

## IV.  CONCLUSION

For the foregoing reasons, we conclude, based on the undisputed record evidence, that an investigation into Plaintiff's claims of race discrimination, gender discrimination, and a discriminatory failure to promote could not "reasonably be expected to grow out of the charge" that Plaintiff filed, Ostapowicz, 541 F.2d at 399, and that neither the SSA nor the union interfered with Plaintiff's exhaustion of her administrative remedies with respect to those claims. We therefore conclude that Plaintiff may not assert claims of race discrimination, gender discrimination or failure to promote in this action, because she has failed to exhaust her administrative remedies with respect to those claims. Consequently, we grant Defendant's Motion for Partial Summary Judgment insofar as it seeks judgment in its favor on those claims.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.